IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **TRANSCAP ASSOCIATES, INC.,** | | |
| Plaintiff, | | |
| v. | | No. 08 CV 723 (JTD) |
| **EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY** and **ROBERT M. FRANCISCO**, | | |
| Defendants. | | |

## ANSWER AND COUNTERCLAIM

Defendants, Euler Hermes American Credit Indemnity Company ("Euler") and Robert M. Francisco ("Francisco") by their attorneys Vedder Price P.C. and Halperin Battachlia Raicht, LLP, answering the complaint (averments thereof reproduced below), and for a counterclaim, aver as follows:

## NATURE OF ACTION

**ALLEGATION NO. 1:** This is an insurance coverage action brought by Transcap under a credit insurance policy issued by Euler and against the insurance producer that sold Transcap the policy at issue. In Count I of this action, Transcap seeks damages against Euler for breach of contract as a result of Euler's failure to honor its contractual duties and obligations under a Domestic Markets Business Credit Insurance Policy issued by Euler to Transcap. In Count II, Transcap seeks a declaratory judgment on Euler's obligations under the Euler Policy to pay sums owed to Transcap on the claim submitted by Transcap and denied by Euler and on the scope of coverage provided by the Euler Policy. In Count III, Transcap seeks damages against Euler for consumer fraud based on representations by Euler that the Euler Policy would cover the types of claims submitted by Transcap, including the type of claim that forms the basis of this lawsuit. In Count IV, Transcap seeks damages against Francisco and Euler, as Francisco's employer, for a breach of the duty of ordinary care and skill in procuring the appropriate type of insurance policy for Transcap and for failing to obtain for Transcap the insurance coverage that Transcap requested. In Count V, Transcap seeks damages from Euler for its vexatious and unreasonable failure to pay the claim submitted by Transcap, In Count VI, Transcap seeks to equitably estop Euler from denying that the Euler Policy provides coverage to Transcap for the loss at issue because

Transcap reasonably relied to its detriment on the false representations of coverage made by Euler and its agent, Francisco.

**ANSWER:** Paragraph 1 of the complaint is a summary of the claims and contentions of plaintiff to which defendants are not required to respond. Defendants deny liability to plaintiff and incorporate by reference their specific answers/responses set forth below. Without limitation to such answers, responses and other matters set forth below, Euler, an issuer of commercial trade credit insurance and Francisco, its then-sales agent, denying liability, assert that the claims asserted by Transcap, an insured, are not covered by the express terms of the subject policy, since there were no "Shipments" as defined in the policy, one of successive policies plaintiff applied for more than four years ago, based on representations it made concerning the nature of its business, which policies were delivered to and accepted by plaintiff on four separate occasions.

## PARTIES AND VENUE

**ALLEGATION NO. 2:** Plaintiff Transcap [Associates, Inc.] is a corporation organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Transcap is in the business of providing financing to manufacturers and distributors.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 2 of the complaint except avers that in or about August 2004, Ira J. Edelson, President of Transcap Associates Inc. and Michael Sear, Executive Vice President/General Manager of Transcap met with Robert M. Francisco, Sales Vice President of Euler and informed him, in substance, among other things, that, in addition to its existing business, Transcap was initiating a new venture functioning as an importer of miscellaneous consumer goods (video games, electronic game toys, MP3 players, apparel/clothing etc.); that products were to be drop shipped by foreign manufacturers direct to domestic buyers; that

Transcap would  invoice for goods upon receipt of shipping documents; and that this was a new

sales strategy for Transcap.

**ALLEGATION NO. 3:** Based on information and belief, defendant Euler is a corporation organized under the laws of the State of Maryland with its principal place of business in Owings Mills, Maryland.

**ANSWER:**    Defendants admit the averments of paragraph 3 of the complaint.

**ALLEGATION NO. 4:** Based on information and belief, defendant Francisco is an individual whose legal residence is in the State of Illinois. At all times mentioned herein, Francisco was acting in the employment of and as an agent of Euler.

**ANSWER:**    Defendants deny the averments of paragraph 4 of the complaint except admit that

at certain times, until approximately July 2006, Francisco had been employed as a sales vice

president by Euler and acted in such capacity.

**ALLEGATION NO. 5:** Venue is proper in this court pursuant to 735 ILCS 5/2-101, *et seq*., in that, among other things, the transactions or some part thereof out of which the causes of action

asserted herein arose took place in this County, Transcap is a resident of this County, and, on

information and belief, Euler does business in this County.

**ANSWER:** Paragraph 5 of the complaint asserts conclusions of law to which defendants are not

required to respond; otherwise are without knowledge or information sufficient to form a belief

as to the truth of the averments of said paragraph except admit that Euler issued a certain policy

of trade credit insurance policy to Transcap and that it does business, among other places, in

Cook County, Illinois.

## THE BUSINESS OF TRANSCAP

**ALLEGATION NO. 6:** Transcap assists manufacturers and distributors by providing them with funding for the purchase of inventory pursuant to its Global Trade Credit Program. Under this program, Transcap purchases inventory on behalf of its clients and resells that inventory to the client on payment terms more favorable than those which might otherwise be available from trade creditors or other funding sources. Thus, for example, where a manufacturer could purchase inventory only by making immediate cash payment or securing its obligations with a letter of credit, the Global Trade Credit Program permits manufacturer-clients of Transcap to

purchase inventory through Transcap an 60 day terms and without providing security for repayment.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 6 of the complaint except refer to their response to paragraphs 8, 9 and 10 below as to what information Euler received from Transcap as to the nature of its business.

**ALLEGATION NO. 7:** Transcap does not itself produce any goods and is not the manufacturer of any of the inventory it sells to its clients. Transcap takes legal ownership of the inventory it purchases on behalf of its clients for only a short period of time and such inventory is never stored on Transcap's premises.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 7 of the complaint except refer to their response to paragraphs 8, 9 and 10 below as to what information Euler received from Transcap as to the nature of its business..

**ALLEGATION NO. 8:** In August 2004, Transcap contacted Euler to discuss the possibility that Transcap would purchase credit insurance from Euler in connection with Transcap's Global Trade Credit Program.

**ANSWER:**    Defendants deny the averments of paragraph 8 of the complaint except admit and aver that in or about August 2004, representatives of Transcap Associates Inc. Contacted Euler regarding the possibility of trade credit insurance for a new venture it was initiating as an importer of miscellaneous consumer goods.

**ALLEGATION NO. 9:** In response to Transcap's inquiry, Francisco came to Transcap's offices and met with Transcap's President, Ira Edelson, and Transcap's Executive Vice President, Michael Sear. At that meeting, Francisco was made aware of Transcap's Global Trade Credit Program, including but not limited to the facts recited in paragraphs 6 and 7 of this Complaint, and the fact that Transcap desired to purchase credit insurance for the risk that a client would fail to repay Transcap for inventory purchased by Transcap on that client's behalf.

**ANSWER:**    Defendants deny the averments of paragraph 9 of the complaint except admit and aver that in or about August 2004, Ira J. Edelson, President of Transcap and Michael Sear,

Executive Vice President/General Manager of Transcap met with Francisco, Sales Vice President of Euler and informed him, in substance, among other things, that Transcap was initiating a new venture functioning as an importer of miscellaneous consumer goods (video games, electronic game toys, MP3 players, apparel/clothing etc.); that products were to be drop shipped by foreign manufacturers direct to domestic buyers; that Transcap would invoice for goods upon receipt of shipping documents; and that this was a new sales strategy for Transcap, for which Transcap was seeking credit insurance.

**ALLEGATION NO. 10:** After discussing Transcap's business model and credit insurance needs, Francisco presented Transcap with an application for a Domestic Markets Business Credit Insurance Policy. Francisco represented to Messrs. Edelson and Sear that the Domestic Markets Business Credit Insurance Policy would be suitable for the credit risk presented by Transcap's Global Trade Credit Program and would provide coverage to Transcap should one of its Global Trade Credit Program clients become insolvent or otherwise default on its payment obligations to Transcap under the program. In making these representations, Francisco understood, among other things, that Transcap was not a manufacturer of goods and that Transcap did not maintain inventory sold to its clients on its own premises as any part of the Global Trade Credit Program.

**ANSWER:** Defendants deny the averments of paragraph 10 of the complaint except admit and aver that on August 13, 2004, Transcap, by its President, Ira J. Edelson, executed a completed Application for a Business Credit Insurance Policy from Euler and refer to the application (and attached reports) for a statement of its content; and that Francisco, who submitted the application to Euler, understood, from conversations with Transcap's representatives, that Transcap was initiating a new venture functioning as an importer of miscellaneous consumer goods (video games, electronic game toys, MP3 players, apparel/clothing etc.), that products were to be drop shipped by foreign manufacturers direct to domestic buyers, that Transcap would invoice for goods upon receipt of shipping documents, and that this was a new sales strategy for Transcap, for which Transcap was seeking credit insurance.

**ALLEGATION NO. 11:** In reliance on the representations made by Francisco Transcap purchased a Domestic Markets Business Credit Insurance Policy from Euler with an initial term of August 15, 2004 through August 14, 2005. The policy subsequently was renewed by Euler on an annual basis. A true and correct copy of the policy issued by Euler to Transcap for the policy period August 15, 2006 through August 14, 2007 (the "Euler Policy") is attached hereto as Exhibit A and incorporated herein by reference.

**ANSWER:**     Defendants deny the averments of paragraph 11 of the complaint except admit and aver that on or about August 15, 2004, Euler, subject to payment of premium, issued to Transcap Associates, Inc. a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 3855357 having a "Policy Period" from August 15, 2004 to August 14, 2005; that on August 15, 2005, Euler issued to Transcap Associates, Inc. a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 3916797 having a "Policy Period" and a "Contract Period" from August 15, 2005 to August 14, 2006; that on August 15, 2006, Euler issued to Transcap Associates, Inc. a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 3995723 having a "Policy Period" and a "Contract Period" from August 15, 2006 to August 14, 2007; and that on August 16, 2007, Euler issued to Transcap Associates, Inc. a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 407788R having a "Policy Period" from August 15, 2007 to August 14, 2008 and a "Contract Period" from August 15, 2007 to August 14, 2009, and refer to the declarations, policy forms, endorsements, applications and any other documents comprising such policies for a statement of the terms and coverages thereof, which policies were issued to and accepted by Transcap upon issuance thereof.

**ALLEGATION NO. 12:** The Euler Policy covers Transcap against credit losses due to the nonpayment of amounts due from a covered buyer for shipments of covered products made by Transcap during the policy period, on terms no longer than the maximum terms of sale and which were invoiced in U.S. or Canadian dollars. The types of credit losses covered by the Euler policy include insolvency of a covered buyer and protracted default due to slow payment of a covered buyer. The "covered products" under the Euler Policy are "various consumer products."

**ANSWER:** Defendants deny the averments of paragraph 12 of the complaint except refer to the policies referred to in their response above to paragraph 11 of the complaint for a statement of the terms and coverages of each such policy.

**ALLEGATION NO. 13:** On January 16, 2006, Transcap entered into a Master Purchase Agreement with Alco Industries, Inc. ("Alco") whereby Transcap would acquire inventory for use by Alco, and Alco later would purchase such inventory from Transcap on Transcap's terms.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 13 of the complaint or that Transcap provided a copy of the "Master Purchase Agreement" to Euler at the time the subject policies were applied for or underwritten.

**ALLEGATION NO. 14:**  Alco is a "Covered Buyer" under the Euler Policy with a credit limit of $1,000,000, pursuant to specific endorsement to the Euler Policy.

**ANSWER:**     Defendants deny the averments of paragraph 14 of the complaint except refer to the policies referred to in their response above to paragraph 11 of the complaint for a statement of the terms and coverages of each such policy and as to who was a "**Covered Buyer**" thereunder.

**ALLEGATION NO. 15:** Transcap made three sales of kitchenware to Alco pursuant to three separate invoices: (1) an invoice dated June 4, 2007 for $293,865.01, (2) an invoice dated June 22, 2007 for $277,215.34, and (3) an invoice dated July 16, 2007 for $422,715.54. Each of these sales involved a "shipment" of "covered products" to a "covered buyer" during the "policy period," as those terms are used in the Euler Policy. Each of these sales was made on terms no longer than the "maximum terms of sale" as that term is used in the Euler Policy, and each of these sales was invoiced in U.S. dollars.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 15 of the complaint except deny, upon information and belief, that there were "**Shipments**" or "**Delivery** to the **Buyer**" as defined under the respective policies with respect to the transactions referred to with "Alco" or that any claimed losses from the transactions with "Alco" referred to are credit losses covered under the terms of any of the

credit insurance policies referred to in their response above to paragraph 11 of the complaint or that defendants are otherwise liable for any such losses.

**ALLEGATION NO. 16:** Alco has failed to pay Transcap any of the amounts reflected on the June 4, 2007, June 22, 2007, or July 16, 2007 invoices and thus is in "protracted default" of those invoices as that term is used in the Euler Policy.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 16 of the complaint except deny, upon information and belief, that any claimed losses from the transactions with "Alco" referred to are credit losses covered under the terms of any of the credit insurance policies referred to in their response above to paragraph 11 of the complaint or that defendants are otherwise liable for any such losses.

**ALLEGATION NO. 17:** Transcap timely notified Euler of the protracted default by Alco on its invoices.

**ANSWER:**    Defendants deny the averments of paragraph 17 of the complaint except admit that on or about October 10, 2007 Transcap notified Euler of a claim with respect to claimed losses with respect to claimed transactions with "Alco" under Euler policy no. 399572-3 and refer to the Notification of Claim form and any supporting documentation submitted for a statement of the content thereof (without admitting same).

**ALLEGATION NO. 18:** Euler has denied coverage to Transcap with respect to the losses suffered by Transcap as a result of Alco's protracted default on Transcap's invoices to Alco.

**ANSWER:**    Defendants deny the averments of paragraph 18 of the complaint except admit and aver that Euler duly denied coverage for claimed losses from certain transactions with "Alco" and refer to Euler's notice dated November 27, 2007 and correspondence dated December 7, 2007 regarding non-coverage for Transcap's claim under the Policy and refer to the terms of the credit insurance policies referred to in their response above to paragraph 11 of the complaint.

**COUNT I [BREACH OF CONTRACT]**

**ALLEGATION NO. 19:** Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 18 as though fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses above to the paragraphs referred to as though fully set forth herein.

**ALLEGATION NO. 20:** The Euler Policy was in full force and effect at the time of the loss.

**ANSWER:**    Defendants deny the averments of paragraph 20 of the complaint except refer to any of the credit insurance policies referred to in their response above to paragraph 11 of the complaint for a statement of the "Policy Period" and "Contract Period" of each in relation to the "time of loss" referred to.

**ALLEGATION NO. 21:** All conditions and requirements imposed by the Euler Policy upon Transcap, including the payment of premiums and notice of claims, have been satisfied or have been waived or are subject to an estoppel or other avoidance against Euler.

**ANSWER:**    Defendants deny the averments of paragraph 21 of the complaint or that any conditions or requirements of any of the credit insurance policies referred to in their response above to paragraph 11 of the complaint have been waived or that they are subject to "estoppel" or any other "avoidance" against Euler.

**ALLEGATION NO. 22:** Euler breached the Euler Policy by failing to pay Transcap's covered credit loss of $993,795.89.

**ANSWER:**    Defendants deny the averments of paragraph 22 of the complaint or that there was a "covered credit loss" with respect to transactions involving "Alco."

**ALLEGATION NO. 23:** Transcap has been damaged by Euler's denial of its claim in breach of the Euler Policy.

**ANSWER:** Defendants deny the averments of paragraph 23 of the complaint.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler in an amount to be determined according to proof at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its

attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Transcap such other relief as it deems just and appropriate.

**ANSWER:** The foregoing is a demand for relief to which no response by way of answer is

required; in any event, defendants deny that Transcap is entitled to any such relief.

### COUNT II [DECLARATORY RELIEF]

**ALLEGATION NO. 24:** Transcap incorporates by reference and realleges the allegations of
paragraphs 1 through 23 as though fully set forth herein.

**ANSWER:**   Defendants incorporate by reference their responses above to the paragraphs

referred to as though fully set forth herein.

**ALLEGATION NO. 25:** An actual controversy of a justiciable nature presently exists between
Transcap, on the one hand, and Euler, on the other hand, concerning the parties' rights and
obligations under the Euler Policy with respect to Alco's protracted default and with respect to
the scope of coverage available under the Euler Policy with respect to the credit risk faced by
Transcap in connection with its Global Trade Credit Program.

**ANSWER:** Paragraph 25 of the complaint contain purported statements and conclusions of law

to which defendants are not required to respond; defendants deny any substantive averments.

WHEREFORE Plaintiff Transcap respectfully prays:

(a) that declaratory judgment be entered defining the obligations of Euler under the Euler

Policy and determining any sums clue to Transcap from Euler with respect to Alco's protracted

default;

(b) that Transcap be awarded its costs and expenses, including but not limited to its

attorneys' fees, in bringing and pursuing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Tianscap such other relief as it deems just and appropriate.

**ANSWER:**    The foregoing is a demand for relief to which no response by way of answer is required; in any event, defendants deny that Transcap is entitled to any such relief.

**COUNT III [CONSUMER FRAUD ACT]**

**ALLEGATION NO. 26:** Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 25 as though fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses above to the paragraphs referred to as though fully set forth herein.

**ALLEGATION NO. 27:** To the extent that the Euler Policy does not cover Transcap's losses due to Alco's protracted default, Euler has engaged in deceptive acts or practices in its business, trade, or commerce in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 et seq., by misrepresenting that the Euler Policy would cover the credit losses experienced by Transcap in connection with Transcap's Global Trade Credit Program and by misrepresenting that the Euler Policy would be an appropriate policy for the credit risk faced by Transcap in connection with that program.

**ANSWER:**    Defendants deny the averments of paragraph 27 of the complaint or that Transcap is a "consumer" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, or that the subject transactions are otherwise subject to such Act.

**ALLEGATION NO. 28:** To the extent that the Euler Policy does not cover Transcap's losses due to Alco's protracted default, Euler' intentionally misrepresented to Transcap that the Euler Policy was the appropriate type of insurance coverage for the credit risks that Transcap faced in connection with its Global Trade Credit Program with the intent that Transcap would rely on such representations.

**ANSWER:**    Defendants deny the averments of paragraph 28 of the complaint.

**ALLEGATION NO. 29:** Transcap relied on Euler's misrepresentations by, among other things, purchasing credit insurance from Euler, renewing its credit insurance coverage from Euler, not seeking other coverage from other sources, and paying substantial premiums to Euler.

**ANSWER:**    Defendants deny, upon information and belief, the averments of paragraph 29 of the complaint or that Euler made any "misrepresentations."

**ALLEGATION NO. 30:** As a direct, proximate and foreseeable result of Euler's deceptive acts and practices, Transcap has been damaged.

**ANSWER:**    Defendants deny the averments of paragraph 30 of the complaint.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler for Transcap's actual

damages sustained as a result of Euler's deceptive acts or practices, in an amount to be established through proof at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys' fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post judgment interest; and

(e) that the Court award Transcap such other relief as it deems just and appropriate.

**ANSWER:**     The foregoing is a demand for relief to which no response by way of answer is required; in any event, defendants deny that Transcap is entitled to any such relief.

## COUNT IV [INSURANCE PLACEMENT LIABILITY]

**ALLEGATION NO. 31:** Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 30 as though fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses above to the paragraphs referred to as though fully set forth herein.

**ALLEGATION NO. 32:** Upon information and belief, Francisco is licensed by the State of Illinois to sell, solicit, or negotiate insurance.

**ANSWER:**    Defendants admit the averments of paragraph 32 of the complaint as to trade credit insurance and deny the remaining averments of paragraph 32.

**ALLEGATION NO. 33:** Upon information and belief, Francisco is an insurance producer within the meaning of 735 ILCS 5/2-2201.

**ANSWER:**    Defendants are not required to respond to the purported statements and conclusions of law in paragraph 33 of the complaint; to the extent an answer is required, the averments are denied.

**ALLEGATION NO. 34:** As an insurance producer, Francisco owed a duty of ordinary care and skill in procuring the coverage requested by Transcap.

**ANSWER:**    Defendants are not required to respond to the purported statements and conclusions of law in said paragraphs; to the extent an answer is required, the averments are denied.

**ALLEGATION NO. 35:** Transcap explained its business model to Francisco and requested insurance coverage for the potential credit losses Transcap could suffer in connection with Transcap's Global Trade Credit Program.

**ANSWER:**    Defendants deny the averments of paragraph 35 of the complaint and incorporate by reference its answers to paragraphs 2, 8, 9, 10 and 11 of the complaint.

**ALLEGATION NO. 36:** Francisco presented the Euler Domestic Markets Business Credit Insurance Policy form as a suitable vehicle for covering Transcap's potential credit losses in connection with its Global Trade Credit Program.

**ANSWER:**    Defendants deny the averments of paragraph 35 of the complaint, incorporate by reference its answers to paragraphs 2, 8, 9, 10 and 11 of the complaint, and refer to the

Application for a Business Credit Insurance Policy signed by plaintiff, which expressly provides that "No sales representative is authorized to delete, modify, or waive any policy provisions, either verbally or in writing." *See also* Policy form X. GENERAL CONDITIONS (F) ("No notice to, or anything known by, any Agent or other person will cause a waiver of any provision of this Policy. No agent is authorized to change this Policy or to waive any of its provisions, either verbally or in writing.").

**ALLEGATION NO. 37:** To the extent that the Euler Policy does not cover Transcap's losses resulting from Alco's protracted default, Francisco breached his duty of ordinary care and skill by procuring an insurance policy that does not cover the types of credit losses Transcap would be likely to suffer and for which Transcap sought coverage.

**ANSWER:**   Defendants deny the averments of paragraph 37 of the complaint.

**ALLEGATION NO. 38:** Euler is vicariously liable for the acts of its employee, Francisco, committed within the scope of his employment. Euler ratified the actions of its agent, Francisco, by underwriting and subsequently renewing the Euler Policy for Transcap.

**ANSWER:**   Defendants are not required to respond to the purported statements and conclusions of law in said paragraphs; to the extent an answer is required, the averments are denied.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler and Francisco for Transcap's actual damages sustained as a result of Francisco's breach of duty and Euler's ratification, in an amount to be established through proof' at trial;

(b) that Transcap be awarded its costs and expenses including but not limited to its attorneys' fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post-judgment interest; and

(e) that the Court award Transcap such other relief as it deems Just and appropriate.

**ANSWER:** The foregoing is a demand for relief to which no response by way of answer is required; in any event, defendants deny that Transcap is entitled to any such relief.

**COUNT V [VIOLATION OF ILLINOIS INSURANCE CODE § 155]**

**ALLEGATION NO. 39:** Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 38 as though fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses above to the paragraphs referred to.

**ALLEGATION NO. 40:** Euler's breaches of its insuring obligations and its failure to pay Transcap any portion of the amount of loss it has suffered in connection with Alco's protracted default are vexatious and unreasonable in violation of 215 ILCS § 5/155, and as a direct and natural consequence of Euler's violations of 215 ILCS § 5/155, Transcap is entitled to the statutory remedies provided therefor, including without limitation, money damages in an amount to he proven at trial, statutory damages, attorneys' fees, costs and interest.

**ANSWER:**    Defendants deny the averments of paragraph 40 of the complaint and are not required to respond to the purported statements and conclusions of law in said paragraph; to the extent an answer is required, the averments are denied.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler for Transcap's actual damages sustained as a result of Euler's vexatious and unreasonable denial of coverage in an amount to be established through proof at trial.

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys' fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post-judgment interest; and

(e) that the Court award Transcap such other relief as it deems just and appropriate.

**ANSWER:**     The foregoing is a demand for relief to which no response by way of answer is required; in any event, defendants deny that Transcap is entitled to any such relief.

**COUNT VI [EQUITABLE ESTOPPEL]**

**ALLEGATION NO. 41:** Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 40 as though fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses above to the paragraphs referred to as though fully set forth herein.

**ALLEGATION NO. 42:** Euler's failure to pay Transcap's loss resulting from Alco's protracted default is inconsistent with the conduct and representations of Euler's agents, including but not limited to Francisco, at the time the Euler Policy was underwritten.

**ANSWER:**    Defendants deny the averments of paragraph 42 of the complaint.

**ALLEGATION NO. 43:** Transcap was misled by the representations and conduct of Euler's employees to believe that the Euler Policy provided coverage for the type of loss Transcap has suffered in connection with Alco's protracted default.

**ANSWER:**    Defendants deny the averments of paragraph 43 of the complaint and refer to the Application for a Business Credit Insurance Policy signed by plaintiff which expressly provides that "No sales representative is authorized to delete, modify, or waive any policy provisions, either verbally or in writing."

**ALLEGATION NO. 44:** Transcap relied on Euler's representations and conduct when it initially purchased coverage from Euler in August 2004, and upon each successive annual renewal.

**ANSWER:**    Defendants deny the averments of paragraph 44 of the complaint and refer to the Application for a Business Credit Insurance Policy signed by plaintiff which expressly provides that "No sales representative is authorized to delete, modify, or waive any policy provisions, either verbally or in writing."

**ALLEGATION NO. 45:** Transcap's reliance on Euler's representations and conduct was reasonable, in that Euler's representations and conduct were consistent with the Euler Policy language.

**ANSWER:** Defendants deny the averments of paragraph 45 of the complaint and refer to the Application for a Business Credit Insurance Policy signed by plaintiff which expressly provides

that "No sales representative is authorized to delete, modify, or waive any policy provisions, either verbally or in writing."

**ALLEGATION NO. 46:** Transcap has been prejudiced by its reliance on Euler's and/or its agents' representations and conduct.

**ANSWER:**    Defendants deny the averments of paragraph 46 of the complaint.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler in an amount to be established through proof at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys' fees, in bringing and pursuing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Transcap such other relief as it deems just and appropriate.

**ANSWER:** The foregoing is a demand for relief to which no response by way of answer is required; in any event, defendants deny that Transcap is entitled to any such relief.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.      Under the terms of the subject policy, the "**Covered Products**" under the policy "**Declaration**" are "various consumer goods."

2.      Upon information and belief, the "products" for which claim was made under the subject policy were, instead, for inventory financing, and thus not "**Covered Products**" under the policy "**Declaration.**"   Accordingly, conditions to coverage under the subject policy have not been satisfied.

**Second Affirmative Defense**

3.      Upon information and belief, the goods that were the subject of Transcap's claim were not "**Dispatched"** by Transcap, *i.e.*, they were never in and thus did not leave Transcap's control at any point in time, as defined in the subject policy.

4.      Upon information and belief, the goods that were the subject of the claim were not "**Delivered**" to Alco by Transcap, *i.e.*, they were never in and thus did not leave Transcap's custody and physical control at any point in time, as defined in the subject policy.

5.      Therefore, under the terms of the subject policy, there were no "**Shipments**" of the subject goods to Alco, the purported "**Buyer,**" as such terms are defined in the subject policy.

6.      Since there were no "**Shipments**" or "**Delivery to the Buyer**" as defined under the subject policy with respect to the transactions referred to with "Alco" in that any "**Covered Products**" had not left plaintiff's custody and physical control at the point in time when legal title to and the risk of loss was transferred to the "**Buyer**" (Alco), conditions to coverage under the subject policy have not been satisfied.

**Third Affirmative Defense**

7.      The subject policy was issued based on representations made by plaintiff in its application regarding the nature of the business for which it sought trade credit insurance.

8.      To the extent plaintiff purports to have relied on alleged representations on the part of defendant Robert M. Francisco or any other sales representative with respect to any policy issued by Euler, it is barred and estopped from such reliance as the Application for a Business Credit Insurance Policy signed by plaintiff expressly provides that "No sales representative is authorized to delete, modify, or waive any policy provisions, either verbally or in writing." *See also* Policy form X. GENERAL CONDITIONS (F) ("No notice to, or anything

known by, any Agent or other person will cause a waiver of any provision of this Policy. No agent is authorized to change this Policy or to waive any of its provisions, either verbally or in writing.").

9.      Any reliance on purported policy terms not expressly contained in the actual policies delivered to and accepted by plaintiff was unreasonable as a matter of law.

## Fourth Affirmative Defense

10.      The Application for a Business Credit Insurance Policy signed by plaintiff expressly provides that "We will rely on the representations provided by you in, and in connection with, this application when making decisions regarding any policy we may issue."

11.      The type of policies and terms thereof issued by Euler were in reliance on representations provided by plaintiff in and in connection with its application.

## Fifth Affirmative Defense

12.      The Application for a Business Credit Insurance Policy signed by plaintiff expressly provides that "This application, the policy, and the declarations shall constitute the entire insurance agreement between you and Euler Hermes ACI."

13.      The policies issued by Euler (including the application(s) and declarations) are integrated agreements between the parties thereto.

14.      Any claims based on any oral representations or extrinsic evidence purporting to vary the terms of the policies issued by Euler (and accepted by plaintiff) are barred by the parol evidence rule.

## Sixth Affirmative Defense

15.      In at least four instances, in August 2004, August 2005, August 2006 and August 2007, plaintiff was presented with written policy terms under which there would be no coverage for the type of claim that plaintiff submitted in or about October 2007. In each case,

plaintiff accepted and ratified those policy terms, did not object thereto, nor sought additional or different coverage.

### Seventh Affirmative Defense

16.    Plaintiff is barred and estopped from claiming a different type of policy should have been issued for the particular type of business that it disclosed to Euler in seeking credit insurance.

### Eighth Affirmative Defense

17.    Plaintiff's claims are barred by the applicable statute(s) of limitations.

### Ninth Affirmative Defense

18.    Plaintiff's claims are barred by its laches.

### Tenth Affirmative Defense

19.    Plaintiff ratified the policy terms.

### Eleventh Affirmative Defense

20.    Plaintiff had a duty to read the policies delivered to it.

### Twelth Affirmative Defense

21.    Plaintiff's claims are barred by its unclean hands in that the policies issued by plaintiff were based on plaintiff's own representations as to the nature of the business for which it sought trade credit insurance.

### Thirteenth Affirmative Defense

22.    To the extent plaintiff claims negligence on the part of the defendants or either of them, any liability for negligence (which is expressly denied) is negated by plaintiff's own contributory and/or comparative negligence or other culpable conduct.

**Fourteenth Affirmative Defense**

23.     Any claims under the subject policy are subject to a "Policy Deductible" of $25,000, non-qualifying loss of $2,500 and "Per Buyer Coinsurance" of 5%.

WHEREFORE, Defendants respectfully request this Court enter judgment, in whole or in part, in favor of defendants and against plaintiff and that it award any other just and appropriate relief.

## COUNTERCLAIM FOR DECLARATORY RELIEF

1.     Defendant-counterclaimant Euler Hermes American Credit Indemnity ("Euler") seeks a declaration of its rights and other legal relations *vis-à-vis* plaintiff Transcap Associates, Inc. ("Transcap") with respect to a certain policy of trade credit insurance, pursuant to the Declaratory Judgments Act, 28 U.S.C. Part VI ch. 151 (§§ 2201-2202).

2.     Euler, the issuer of the subject policy, is a corporation incorporated under the laws of the State of Maryland having its principal place of business and offices at Owings Mills, Maryland.

3.     Euler is a leading provider of "trade credit insurance" (also called accounts receivable insurance), which is business insurance that indemnifies a seller/policyholder against losses from non-payment of commercial trade debt due to insolvency or protracted payment defaults of specifically-approved "buyers."

4.     Upon information and belief, Transcap, the policyholder under the subject policy, is a corporation incorporated under the laws of the State of Illinois having its principal place of business at Northbrook, Illinois.

5.      On or about August 15, 2006, Euler issued to Transcap a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 3995723 (the "Policy") having a "**Policy Period**"[1] and a "Contract Period" from August 15, 2006 to August 14, 2007.

6.      The  Policy was delivered to and accepted by Transcap in or about August 2006.

7.      Transcap paid the premium for the Policy, whereupon the Policy became effective for the "**Policy Period**" thereof.

8.      The insuring agreement under the Policy was that Euler "will provide [Transcap] insurance against covered credit losses in this Policy, subject to the terms and conditions stated within, in return for the Premium and your compliance with the provisions of this Policy." Policy I (A). "Subject to terms and conditions of this Policy, [Euler] will cover [Transcap] against credit losses due to the non-payment of amounts due from a covered **Buyer**[2] for **Shipments** of **Covered Products**[3] made by [Transcap] during the **Policy Period**, on terms no longer than the **Maximum Terms of Sale**[4] and which are invoiced in U.S. or Canadian

---

[1]"**Policy Period**, as stated on the **Declaration**, is the period of time during which **Shipments** of **Covered Products** can be **Dispatched** to covered **Buyers** in order to be covered under this Policy."  Policy Form XI Definitions (26).

[2]"**Buyer** means a legal entity and its branch offices, trade styles or divisions, if any, which is domiciled in the United States (including Puerto Rico) or Canada and is approved for coverage under this Policy. **Buyer** does not include subsidiaries or affiliated corporations which are separate legal entities." Policy Form XI Definitions (2).

[3]"**Covered Products** means the products and/or services, including associated labor and service costs, described in the **Declaration**."  Policy Form XI Definitions (4).

[4]"**Maximum Terms of Sale** means the number of days shown on the **Declaration** up to which the Insured is permitted to sell to its **Buyers** without obtaining the Company's written approval."  Policy Form XI Definitions (16).

Dollars. . . . Credit losses covered under this Policy are: 1. The **Insolvency** of a covered **Buyer**, or 2. **Protracted Default**[5] due to slow payment of a covered **Buyer**." Policy II (A), (B).

9.       "**Shipments** mean **Covered Products** which are **Dispatched** by the Insured and **Delivered** to a **Buyer**." Policy Form XI Definitions (32). "**Dispatched** to the **Buyer** means the point in time when **Covered Products** leave the Insured's control." Policy Form XI Definitions (8). "**Delivery** to the **Buyer** means the point in time when legal title to and the risk of loss of the **Covered Products** is transferred to the **Buyer** and the **Covered Products** have left [the Insured's] custody and physical control." Policy Form XI Definitions (6).

10.       The **"Covered Products"** under the Policy, *i.e.*, "the products . . . described in the **Declaration**" were "various consumer products."

11.       On or about October 9, 2007, Transcap filed a claim under the Policy, subject to backup documentation, for products sold to Alco Industries, Inc. ("Alco"), assorted kitchenware purportedly sold under invoices dated June 4, 2007, June 22, 2007 and July 16, 2007, on 60-day terms, in the aggregate amount of $993,795.89, which allegedly had not been paid by Alco.

12.       Upon information and belief, the goods that were the subject of the invoices referred to in the preceding paragraph were never in Transcap's custody and physical control.

13.       Rather, upon information and belief, such goods had been transferred to the custody and physical control of the purchaser, Alco, prior to the dates of the invoices, and remained in Alco's warehouse facility in Cranford, New Jersey.

---

[5]"**Protracted Default** means a covered payment default by a **Buyer** that is not insolvent."  Policy Form XI Definitions (29).

14.    Upon information and belief, the invoices pertained to an inventory financing arrangement with Alco, rather than being consumer products sold by Transcap.

15.    The goods that were the subject of the claim were not "**Dispatched"** by Transcap, *i.e.*, they were never in and thus did not leave Transcap's control at any point in time, as defined in the Policy.

16.    The goods that were the subject of the claim were not "**Delivered**" to Alco by Transcap, *i.e.*, they were never in and thus did not leave Transcap's custody and physical control at any point in time, as defined in the Policy.

17.    Therefore, under the terms of the Policy, there were no "**Shipments**" of the subject goods to Alco Industries, Inc., the purported "**Buyer**" under the Policy, as defined in the Policy.

18.    By letter dated November 27, 2007 to Transcap, Euler duly denied coverage for claimed losses from the "Alco" transactions.

19.    Upon information and belief, Transcap claims that the Policy covers credit losses arising from the Alco transactions, which Euler disputes.

20.    A justiciable controversy exists as to coverage under the Policy, warranting a declaration of the rights and other legal relations of Euler *vis-à-vis* Transcap with respect to the Policy.

WHEREFORE Euler seeks a declaration that there is no coverage under the terms of the Policy for the claims of Transcap with respect to the Alco transactions.

**Demand for Judgment:**  Defendants Euler Hermes American Indemnity Company and Robert M. Francisco demand judgment in their favor dismissing the complaint and claims of plaintiff Transcap Associates, Inc. and declaring that   Euler Hermes American Indemnity

Company is not required to indemnify plaintiff for its claims under the subject credit insurance policy, including reasonable attorneys' fees to the extent recoverable under the subject policy or at law, and according such other and further relief as the Court deems just and equitable.

March 24, 2008                                    Respectfully submitted,

**EULER HERMES AMERICAN CREDIT INDEMNITY COMPANY** and **ROBERT M. FRANCISCO**,


By:   s/Cindy S. Stuyvesant
                                         One of Their Attorneys

Kevin J. Kuhn
Cindy S. Stuyvesant
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500
(312) 609-5005

Alan D. Halperin
Andrew P. Saulitis
Halperin Battaglia Raicht, LLP
555 Madison Avenue
New York, New York 10022-3301
(212) 459-0900
(212) 459-1826