IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANSCAP ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08 C 723 |
| ) | |
| EULER HERMES AMERICAN ) | Judge John W. Darrah |
| CREDIT INDEMNITY COMPANY ) | |
| and ROBERT M. FRANCISCO, ) | Magistrate Judge Mason |
| individually and as agent of Euler ) | |
| Hermes American Credit Indemnity ) | JURY TRIAL DEMANDED |
| Company, ) | |
| ) | |
| Defendants. ) | |

**TRANSCAP'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT AND COUNTER-PLAINTIFF EULER'S COUNTERCLAIM**

Plaintiff and Counter-Defendant Transcap Associates, Inc. ("Transcap"), by and through its counsel, in Answer to the Counterclaim of Defendant and Counter-Plaintiff Euler Hermes American Credit Indemnity Company ("Euler"), hereby denies each and every allegation, matter and thing contained in Euler's Counterclaim, except as expressly admitted or qualified below.

**COUNTERCLAIM FOR DECLARATORY RELIEF**

1.   Defendant-counterclaimant Euler Hermes American Credit Indemnity ("Euler") seeks a declaration of its rights and other legal relations vis-à-vis plaintiff Transcap Associates, Inc. ("Transcap") with respect to a certain policy of trade credit insurance, pursuant to the Declaratory Judgments Act, 28 U.S.C. Part VI ch. 151 (§§ 2201-2202).

**ANSWER**:   Paragraph 1 of the Counterclaim is a summary of the claims and contentions of Euler to which Transcap is not required to respond.

2.   Euler, the issuer of the subject policy, is a corporation incorporated under the laws of the State of Maryland having its principal place of business and offices at Owings Mills, Maryland.

**ANSWER**: Transcap is informed and believes that the allegations in paragraph 2 of the Counterclaim are accurate and admits the allegations on such basis.

3. Euler is a leading provider of "trade credit insurance" (also called accounts receivable insurance), which is business insurance that indemnifies a seller/policyholder against losses from non-payment of commercial trade debt due to insolvency or protracted payment defaults of specifically-approved "buyers."

**ANSWER**: Transcap admits that Euler is a provider of credit insurance and that Euler issues insurance policies providing such insurance, but denies the allegations of paragraph 3 to the extent that they inaccurately or inadequately describe Euler or the terms and provisions of the insurance polices it issues, which policies speak for themselves. Transcap is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 of the Counterclaim, and therefore denies them.

4. Upon information and belief, Transcap, the policyholder under the subject policy, is a corporation incorporated under the laws of the State of Illinois having its principal place of business at Northbrook, Illinois.

**ANSWER**: Transcap admits the allegations of paragraph 4 of the Counterclaim.

5. On or about August 15, 2006, Euler issued to Transcap a "Domestic Markets Policy" of trade credit insurance designated as Policy No. 3995723 (the "Policy") having a "Policy Period"[1] and a "Contract Period" from August 15, 2006 to August 14, 2007.

**ANSWER**: Transcap admits that on or about August 15, 2006, Euler issued to Transcap an insurance policy designated as Policy No. 3995723. Transcap admits the remaining allegations of paragraph 5 of the Counterclaim only insofar as and to the extent that they accurately state the provisions of the Policy, but otherwise denies those allegations.

6. The Policy was delivered to and accepted by Transcap in or about August 2006.

---

[1] "Policy Period, as stated on the Declaration, is the period of time during which Shipments of Covered Products can be Dispatched to covered Buyers in order to be covered under this Policy." Policy Form XI Definitions (26).

**ANSWER**:   Transcap admits that the Policy was delivered to Transcap in or about August 2006.  The remaining allegations of paragraph 6 of the Counterclaim state legal conclusions to which Transcap is not required to respond.

7.     Transcap paid the premium for the Policy, whereupon the Policy became effective for the "Policy Period" thereof.

**ANSWER**:   Transcap admits that it paid the premium for the Policy.  The remaining allegations of paragraph 7 of the Counterclaim state legal conclusions to which Transcap is not required to respond.

8.     The insuring agreement under the Policy was that Euler "will provide [Transcap] insurance against covered credit losses in this Policy, subject to the terms and conditions stated within, in return for the Premium and your compliance with the provisions of this Policy." Policy I (A). "Subject to terms and conditions of this Policy, [Euler] will cover [Transcap] against credit losses due to the non-payment of amounts due from a covered Buyer[2] for Shipments of Covered Products[3] made by [Transcap] during the Policy Period, on terms no longer than the Maximum Terms of Sale[4] and which are invoiced in U.S. or Canadian Dollars. . . . Credit losses covered under this Policy are: 1. The Insolvency of a covered Buyer, or 2. Protracted Default[5] due to slow payment of a covered Buyer." Policy II (A), (B).

**ANSWER**:   Transcap admits the allegations of paragraph 8 of the Counterclaim only insofar as and to the extent that they accurately state the provisions of the Policy, but otherwise denies those allegations.

9.     "Shipments mean Covered Products which are Dispatched by the Insured and Delivered to a Buyer." Policy Form XI Definitions (32). "Dispatched to the Buyer means the point in time

---

[2] "Buyer means a legal entity and its branch offices, trade styles or divisions, if any, which is domiciled in the Untied States (including Puerto Rico) or Canada and is approved for coverage under this Policy.  Buyer does not include subsidiaries or affiliated corporations which are separate legal entities."  Policy Form XI Definitions (2).

[3] "Covered Products means the products and/or services, including associated labor and service costs, described in the Declaration."  Policy Form XI Definitions (4).

[4] "Maximum Terms of Sale means the number of days shown on the Declaration up to which the Insured is permitted to sell to its Buyers without obtaining the Company's written approval." Policy Form XI Definitions (16).

[5] "Protracted Default means a covered payment default by a Buyer that is not insolvent."  Policy Form XI Definitions (29).

when Covered Products leave the Insured's control." Policy Form XI Definitions (8). "Delivery to the Buyer means the point in time when legal title to and the risk of loss of the Covered Products is transferred to the Buyer and the Covered Products have left [the Insured's] custody and physical control." Policy Form XI Definitions (6).

**ANSWER**:     Transcap admits the allegations of paragraph 9 of the Counterclaim only insofar as and to the extent that they accurately state the provisions of the Policy, but otherwise denies those allegations.

10.     The "Covered Products" under the Policy, i.e., "the products . . . described in the Declaration" were "various consumer products."

**ANSWER**:     Transcap admits the allegations of paragraph 10 of the Counterclaim only insofar as and to the extent that they accurately state the provisions of the Policy, but otherwise denies those allegations.

11.     On or about October 9, 2007, Transcap filed a claim under the Policy, subject to backup documentation, for products sold to Alco Industries, Inc. ("Alco"), assorted kitchenware purportedly sold under invoices dated June 4, 2007, June 22, 2007 and July 16, 2007, on 60-day terms, in the aggregate amount of $993,795.89, which allegedly had not been paid by Alco.

**ANSWER**:     Transcap admits that on or about October 9, 2007, Transcap submitted a claim for products sold to Alco under invoices dated June 4, 2007, June 22, 2007 and July 16, 2007, on 60-day terms, in the aggregate amount of $993,795.89, and that these invoices have not been paid by Alco.  Transcap denies the remaining allegations of paragraph 11 of the Counterclaim.

12.     Upon information and belief, the goods that were the subject of the invoices referred to in the preceding paragraph were never in Transcap's custody and physical control.

**ANSWER**:     The allegations of paragraph 12 of the Counterclaim state legal conclusions to which Transcap is not required to respond.  To the extent a response is required, Transcap states that Transcap took legal ownership of the inventory it sold to Alco, that the inventory was never stored on Transcap's premises, but that the goods were within Transcap's custody and physical control within the meaning of the Policy.

13.     Rather, upon information and belief, such goods had been transferred to the custody and physical control of the purchaser, Alco, prior to the dates of the invoices, and remained in Alco's warehouse facility in Cranford, New Jersey.

**ANSWER**:    Transcap admits that the goods at issue were in Alco's warehouse facility at the time the invoices were issued by Transcap, but otherwise denies the allegations of paragraph 13 of the Counterclaim.

14.     Upon information and belief, the invoices pertained to an inventory financing arrangement with Alco, rather than being consumer products sold by Transcap.

**ANSWER**:    Transcap states that the invoices were for consumer products sold by Transcap to Alco as part of Transcap's Global Trade Credit Program, whereby Transcap purchases inventory on behalf of its clients and resells that inventory to the client on payment terms more favorable than those which might otherwise be available from trade creditors or other funding sources. Except as specifically admitted, Transcap denies the allegations of paragraph 14 of the Counterclaim.

15.     The goods that were the subject of the claim were not "Dispatched" by Transcap, i.e., they were never in and thus did not leave Transcap's control at any point in time, as defined in the Policy.

**ANSWER**:    Paragraph 15 of the Counterclaim states legal conclusions to which Transcap is not required to respond.  To the extent a response is required, Transcap denies the allegations of paragraph 15 of the Counterclaim.

16.     The goods that were the subject of the claim were not "Delivered" to Alco by Transcap, i.e., they were never in and thus did not leave Transcap's custody and physical control at any point in time, as defined in the Policy.

**ANSWER**:    Paragraph 16 of the Counterclaim states legal conclusions to which Transcap is not required to respond.  To the extent a response is required, Transcap denies the allegations of paragraph 16 of the Counterclaim.

17. Therefore, under the terms of the Policy, there were no "Shipments" of the subject goods to Alco Industries, Inc., the purported "Buyer" under the Policy, as defined in the Policy.

**ANSWER**: Paragraph 17 of the Counterclaim states legal conclusions to which Transcap is not required to respond. To the extent a response is required, Transcap denies the allegations of paragraph 17 of the Counterclaim.

18. By letter dated November 27, 2007 to Transcap, Euler duly denied coverage for claimed losses from the "Alco" transactions.

**ANSWER**: Transcap admits that it received a letter dated November 27, 2007 from Euler denying coverage. The remaining allegations of Paragraph 18 of the Counterclaim state legal conclusions to which Transcap is not required to respond. To the extent a response is required, Transcap denies the remaining allegations of paragraph 18 of the Counterclaim.

19. Upon information and belief, Transcap claims that the Policy covers credit losses arising from the Alco transactions, which Euler disputes.

**ANSWER**: Transcap admits the allegations of paragraph 19 of the Counterclaim.

20. A justiciable controversy exists as to coverage under the Policy, warranting a declaration of the rights and other legal relations of Euler vis-à-vis Transcap with respect to the Policy.

**ANSWER**: Paragraph 20 of the Counterclaim states legal conclusions to which Transcap is not required to respond.

WHEREFORE Euler seeks a declaration that there is no coverage under the terms of the Policy for the claims of Transcap with respect to the Alco transactions.

**ANSWER**: The foregoing is a demand for relief to which no response by way of answer is required. To the extent that a response is required, Transcap denies that Euler is entitled to the relief it requests.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses herein, Transcap, through its counsel, alleges upon knowledge as to its own acts and on information and belief as to the acts of all others, as follows:

**FIRST AFFIRMATIVE DEFENSE**

The Counterclaim fails to state a cause of action against Transcap upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Euler is not entitled to the relief sought by the Counterclaim because Euler, by reason of its conduct, has waived any right to assert the claims contained therein.

**THIRD AFFIRMATIVE DEFENSE**

Euler is not entitled to the relief sought by the Counterclaim because Euler, by reason of its conduct, is estopped from asserting the claims contained therein.

**FOURTH AFFIRMATIVE DEFENSE**

Euler is not entitled to the relief sought by the Counterclaim because Euler has breached its obligations under the policy, including but not limited to its obligations of good faith and fair dealing.

**FIFTH AFFIRMATIVE DEFENSE**

Euler is not entitled to the relief sought by the Counterclaim because Euler, by reason of its conduct, is prevented from asserting the claims contained therein by the doctrine of unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**

Euler is not entitled to the relief sought by the Counterclaim because Euler, by reason of its conduct, is prevented from asserting the claims contained therein by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

Euler may have additional affirmative defenses of which it is not yet fully aware at this time and reserves the right to assert additional affirmative defenses after the same shall have been ascertained.

WHEREFORE, Transcap respectfully requests that judgment be entered in its favor and against Euler, finding that Euler has breached its insuring obligations to Transcap, awarding damages to Transcap, awarding Transcap its costs and attorneys' fees herein, and providing Transcap with such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Transcap hereby demands trial by jury for all issues deemed so triable.

Dated: April 14, 2008

                Respectfully Submitted,

                TRANSCAP ASSOCIATES, INC.


                By:      Grant Y. Lee
                      One of Its Attorneys

Thomas A. Marrinson
Grant Y. Lee
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL  60606
Phone:  (312) 207-1000
Fax: (312) 207-6400