IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANSCAP ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08 C 723 |
| ) | |
| EULER HERMES AMERICAN ) | Judge John W. Darrah |
| CREDIT INDEMNITY COMPANY ) | |
| and ROBERT M. FRANCISCO, ) | Magistrate Judge Mason |
| individually and as agent of Euler ) | |
| Hermes American Credit Indemnity ) | JURY TRIAL DEMANDED |
| Company, ) | |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
AND OTHER RELIEF**

Plaintiff Transcap Associates, Inc. ("Transcap"), by and through its attorney, files this First Amended Complaint against defendants Euler Hermes American Credit Indemnity Company ("Euler") and Robert M. Francisco ("Francisco"), individually and as agent of Euler, and alleges as follows:

**NATURE OF ACTION**

1. This is an insurance coverage action brought by Transcap under a credit insurance policy issued by Euler and against the insurance producer that sold Transcap the policy at issue. In Count I of this action, Transcap seeks damages against Euler for breach of contract as a result of Euler's failure to honor its contractual duties and obligations under a Domestic Markets Business Credit Insurance Policy issued by Euler to Transcap (the "Euler Policy"). In Count II, Transcap seeks a declaratory judgment on Euler's obligations under the Euler Policy to pay sums owed to Transcap on the claims submitted

by Transcap and denied by Euler and on the scope of coverage provided by the Euler Policy. In Count III, Transcap seeks damages against Euler for consumer fraud based on representations by Euler that the Euler Policy would cover the types of claims submitted by Transcap, including the claims that form the basis of this lawsuit. In Count IV, Transcap seeks damages against Francisco and Euler, as Francisco's employer, for breach of the duty of ordinary care and skill in procuring the appropriate type of insurance policy for Transcap and for failing to obtain for Transcap the insurance coverage that Transcap requested. In Count V, Transcap seeks damages from Euler for its vexatious and unreasonable failure to pay the claims submitted by Transcap. In Count VI, Transcap seeks to equitably estop Euler from denying that the Euler Policy provides coverage to Transcap for the losses at issue because Transcap reasonably relied to its detriment on the false representations of coverage made by Euler and its agent, Francisco.

## THE PARTIES

2.   Plaintiff Transcap is a corporation organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Transcap is in the business of providing financing to manufacturers and distributors.

3.   Based on information and belief, defendant Euler is a corporation organized under the laws of the State of Maryland with its principal place of business in Owings Mills, Maryland.

4.   Based on information and belief, defendant Francisco is an individual whose legal residence is in the State of Florida.

## JURISDICTION AND VENUE

5. On February 1, 2008, defendants removed this action, which was originally filed in the Circuit Court of Cook County, Illinois, to this Court. As explained in their removal papers, the basis for removal was that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different States within the meaning of 28 U.S.C. § 1332(a) and (c) and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this action pursuant to 28 U.S.C. 1391(a) in that, among other things, a substantial part of the events or omissions giving rise to the claims asserted herein took place in this District.

## THE BUSINESS OF TRANSCAP

7. Transcap assists manufacturers and distributors by providing them with funding for the purchase of inventory pursuant to its Global Trade Credit Program. Under this program, Transcap purchases inventory on behalf of its clients and resells that inventory to the client on payment terms more favorable than those which might otherwise be available from trade creditors or other funding sources. Thus, for example, where a manufacturer could purchase inventory only by making immediate cash payment or securing its obligations with a letter of credit, the Global Trade Credit Program permits manufacturer-clients of Transcap to purchase inventory through Transcap on 60 day terms and without providing security for repayment.

8. Transcap does not itself produce any goods and is not the manufacturer of any of the inventory it sells to its client. Transcap takes legal ownership of the inventory it

purchases on behalf of its clients for only a short period of time, and such inventory is never stored on Transcap's premises.

### TRANSCAP'S PURCHASE OF CREDIT INSURANCE FROM EULER

9. In August 2004, Transcap contacted Euler to discuss the possibility that Transcap would purchase credit insurance from Euler in connection with Transcap's Global Trade Credit Program.

10. In response to Transcap's inquiry, Francisco came to Transcap's offices and met with Transcap's President, Ira Edelson, and Transcap's Executive Vice President, Michael Sear. At that meeting, Francisco was made aware of Transcap's Global Trade Credit Program, including but not limited to the facts recited in paragraphs 7 and 8 of this Complaint, and the fact that Transcap desired to purchase credit insurance for the risk that a client would fail to repay Transcap for inventory purchased by Transcap on that client's behalf.

11. After discussing Transcap's business model and credit insurance needs, Francisco presented Transcap with an application for a Domestic Markets Business Credit Insurance Policy. Francisco represented to Messrs. Edelson and Sear that the Domestic Markets Credit Insurance Policy would be suitable for the credit risk presented by Transcap's Global Trade Credit Program and would provide coverage to Transcap should one of its Global Trade Credit Program clients become insolvent or otherwise default on its payment obligations to Transcap under the program. In making these representations, Francisco understood, among other things, that Transcap was not a manufacturer of goods and that Transcap did not maintain inventory sold to its clients on its own premises as any part of the Global Trade Credit Program.

12. In reliance on the representations made by Francisco, Transcap purchased a Domestic Markets Business Credit Insurance Policy from Euler with an initial term of August 15, 2004 through August 14, 2005. The policy subsequently was renewed by Euler on an annual basis, such that it was in force and effect during the periods relevant to this action.

**THE COVERAGE UNDER THE EULER POLICY AND TRANSCAP'S LOSSES**

13. The Euler Policy covers Transcap against credit losses due to the non-payment of amounts due from a covered buyer for shipments of covered products made by Transcap during the policy period, on terms no longer than the maximum terms of sale and which were invoiced in U.S. or Canadian dollars. The types of credit losses covered by the Euler Policy include insolvency of a covered buyer and protracted default due to slow payment by a covered buyer. The "covered products" under the Euler Policy are "various consumer products."

14. On January 16, 2006, Transcap entered into a Master Purchase Agreement with Alco Industries, Inc. ("Alco") whereby Transcap would acquire inventory for use by Alco, and Alco later would purchase such inventory from Transcap on Transcap's terms.

15. Alco is a "Covered Buyer" under the Euler Policy with a credit limit of $1,000,000, pursuant to a specific endorsement to the Euler Policy.

16. Transcap made three sales of kitchenware to Alco pursuant to three separate invoices: (1) an invoice dated June 4, 2007 for $293,865.01, (2) an invoice dated June 22, 2007 for $277,215.34, and (3) an invoice dated July 16, 2007 for $422,715.54.

17. Each of these sales involved a "shipment" of "covered products" to a "covered buyer" during the "policy period," as those terms are used in the Euler Policy. Each of

these sales was made on terms no longer than the "maximum terms of sale" as that term is used in the Euler Policy, and each of these sales was invoiced in U.S. dollars.

18. Alco has failed to pay Transcap any of the amounts reflected on the June 4, 2007, June 22, 2007 or July 16, 2007 invoices and thus is in "protracted default" of those invoices as that term is used in the Euler Policy.

19. On September 6, 2007, Transcap entered into a Master Purchase Agreement with New River Cabinet & Fixture, Inc. ("New River"), whereby Transcap would acquire inventory for use by New River, and New River later would purchase such inventory from Transcap on Transcap's terms.

20. New River is a "Covered Buyer" under the Euler Policy with a credit limit of $350,000, pursuant to a specific endorsement to the Euler Policy.

21. Transcap made two sales to New River pursuant to two separate invoices: (1) an invoice dated November 2, 2007 for $100,392.79 and (2) an invoice dated December 7, 2007 for $121,113.93

22. Each of these sales involved a "shipment" of "covered products" to a "covered buyer" during the "policy period," as those terms are used in the Euler Policy. Each of these sales was made on terms no longer than the "maximum terms of sale" as that term is used in the Euler Policy, and each of these sales was invoiced in U.S. dollars.

23. New River has failed to pay Transcap any of the amounts reflected on the November 2, 2007 and December 7, 2007 invoices and thus is in "protracted default" of those invoices as that term is used in the Euler Policy.

## EULER'S DENIAL OF TRANSCAP'S CLAIMS

24. Transcap timely notified Euler of the protracted defaults by Alco and New River on the above-referenced invoices.

25. Euler has denied coverage to Transcap with respect to the losses suffered by Transcap as a result of the "protracted defaults" by Alco and New River on the above-referenced invoices.

## COUNT I
## BREACH OF CONTRACT
## (Against Euler)

26. Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 25 as though fully set forth herein.

27. The Euler Policy was in full force and effect at the time of the loss.

28. All conditions and requirements imposed by the Euler Policy upon Transcap, including the payment of premiums and notice of claims, have been satisfied or have been waived, or are subject to an estoppel or other avoidance against Euler.

29. Euler breached the Euler Policy by failing to pay Transcap's covered credit losses of $1,215,302.50.

30. Transcap has been damaged by Euler's denials of its claims in breach of the Euler Policy.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler in an amount to be determined according to the proofs at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Transcap such other relief as it deems just and appropriate.

**COUNT II**
**DECLARATORY RELIEF**
**(Against Euler)**

31.    Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 30 as though fully set forth herein.

32.    An actual controversy of a justiciable nature presently exists between Transcap, on the one hand, and Euler, on the other hand, concerning the parties' rights and obligations under the Euler Policy with respect to Alco's and New River's protracted defaults and with respect to the scope of coverage available under the Euler Policy with respect to credit risk faced by Transcap in connection with its Global Trade Credit Program.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that declaratory judgment be entered defining the obligations of Euler under the Euler Policy and determining any sums due to Transcap from Euler with respect to Alco's and New River's protracted defaults;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys fees, in bringing and pursing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Transcap such other relief as it deems just and appropriate.

## COUNT III
## CONSUMER FRAUD ACT
### (Against Euler)

33. Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 32 as though fully set forth herein.

34. To the extent that the Euler Policy does not cover Transcap's losses due to Alco's and New River's protracted defaults, Euler has engaged in deceptive acts or practices in its business, trade, or commerce in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 et seq., by misrepresenting that the Euler Policy would cover the credit losses of Transcap in connection with Transcap's Global Trade Credit Program and by misrepresenting that the Euler Policy would be an appropriate policy for the credit risk faced by Transcap in connection with that program.

35. To the extent that the Euler Policy does not cover Transcap's losses due to Alco's and New River's protracted defaults, Euler intentionally misrepresented to Transcap that the Euler Policy was the appropriate type of insurance coverage for the credit risks that Transcap faced in connection with its Global Trade Credit Program with the intent that Transcap would rely on such representations.

36. Transcap relied on Euler's misrepresentations by, among other things, purchasing credit insurance from Euler, renewing its credit insurance coverage from Euler, not seeking other coverage from other sources, and paying substantial premiums to Euler.

37. As a direct, proximate and foreseeable result of Euler's deceptive acts and practices, Transcap has been damaged.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler for Transcap's actual damages sustained as a result of Euler's deceptive acts or practices, in an amount to be established through proof at trial;

(b) that Transcap be awarded its costs and expenses, including, but not limited to its attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post-judgment interest; and

(e) that the Court award Transcap such other relief as it deems just and appropriate.

## COUNT IV
## INSURANCE PLACEMENT LIABILITY
### (Against Euler and Francisco)

38. Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 37 as though fully set forth herein.

39. Upon information and belief, Francisco is licensed by the State of Illinois to sell, solicit, or negotiate insurance.

40. Francisco is an insurance producer within the meaning of 735 ILCS 5/2-2201.

41. As an insurance producer, Francisco owed a duty of ordinary care and skill in procuring the coverage requested by Transcap.

42. Transcap explained its business model to Francisco and requested insurance coverage for the potential credit losses Transcap could suffer in connection with Transcap's Global Trade Credit Program.

43. Francisco presented the Euler Domestic Markets Business Credit Insurance Policy form as a suitable vehicle for covering Transcap's potential credit losses in connection with its Global Trade Credit Program.

44. To the extent that the Euler Policy does not cover Transcap's losses resulting from Alco's and New River's protracted defaults, Francisco breached his duty of ordinary care and skill by procuring an insurance policy that does not cover the types of credit losses Transcap would be likely to suffer and for which Transcap sought coverage.

45. Euler is vicariously liable for the acts of its employee, Francisco, committed within the scope of his employment. Euler ratified the actions of its agent, Francisco, by underwriting and subsequently renewing the Euler Policy for Transcap.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler and Francisco for Transcap's actual damages sustained as a result of Francisco's breach of duty and Euler's ratification, in an amount to be established through proof at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post-judgment interest; and

(e) that the Court award Transcap such other relief as it deems just and appropriate.

## COUNT V
## VIOLATION OF ILLINOIS INSURANCE CODE § 155
### (Against Euler)

46.   Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 45 as though fully set forth herein.

47.   Euler's breaches of its insuring obligations and its failure to pay Transcap any portion of the amount of loss it has suffered in connection with Alco's and New River's protracted defaults are vexatious and unreasonable in violation of 215 ILCS § 5/155, and as a direct and natural consequence of Euler's violations of 215 ILCS § 5/155, Transcap is entitled to the statutory remedies provided therefor, including without limitation, money damages in an amount to be proven at trial, statutory damages, attorneys fees, costs and interest.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler for Transcap's actual damages sustained as a result of Euler's vexatious and unreasonable denials of coverage, in an amount to be established through proof at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded statutory damages;

(d) that Transcap be awarded pre-judgment and post-judgment interest; and

(e) that the Court award Transcap such other relief as it deems just and appropriate.

## COUNT VI
## EQUITABLE ESTOPPEL
### (Against Euler)

48. Transcap incorporates by reference and realleges the allegations of paragraphs 1 through 47 as though fully set forth herein.

49. Euler's failure to pay Transcap's losses resulting from Alco's and New River's protracted defaults is inconsistent with the conduct and representations of Euler's agents, including but not limited to Francisco, at the time the Euler Policy was underwritten.

50. Transcap was misled by the representations and conduct of Euler's employees to believe that the Euler Policy provided coverage for the type of loss Transcap has suffered in connection with Alco's and New River's protracted defaults.

51. Transcap relied on Euler's representations and conduct when it initially purchased coverage from Euler in August 2004, and upon each successive annual renewal.

52. Transcap's reliance on Euler's representations and conduct was reasonable, in that Euler's representations and conduct were consistent with the Euler Policy language.

53. Transcap has been prejudiced by its reliance on Euler's and/or its agent's representations and conduct.

WHEREFORE, Plaintiff Transcap respectfully prays:

(a) that judgment be entered in Transcap's favor and against Euler in an amount to be determined according to the proofs at trial;

(b) that Transcap be awarded its costs and expenses, including but not limited to its attorneys fees, in bringing and pursuing this action;

(c) that Transcap be awarded pre-judgment and post-judgment interest; and

(d) that the Court award Transcap such other relief as it deems just and appropriate.

## JURY DEMAND

Transcap hereby demands a trial by jury on all issues so triable.

                                    Respectfully Submitted,

                                    TRANSCAP ASSOCIATES, INC.

                                    By: /s/ Thomas A. Marrinson
                                           One of Its Attorneys

Thomas A. Marrinson
Grant Y. Lee
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
Phone: (312) 207-1000
Fax: (312) 207-6400

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that the foregoing **First Amended Complaint** was served electronically and via U.S. mail posted from 10 S. Wacker Dr., Chicago, IL 60606 on September 2, 2008 to:

| | |
|---|---|
| Kevin J. Kuhn<br>Cindy S. Stuyvesant<br>Vedder Price P.C.<br>222 North LaSalle Street<br>Chicago, Illinois 60601<br>(312) 609-7500<br>(312) 609-5005<br><br>by using the CM/ECF system which will send electronic notification of such filing to the above. | Alan D. Halperin<br>Andrew P. Saulitis<br>Neal W. Cohen<br>Halperin Battaglia Raicht, LLP<br>555 Madison Avenue<br>New York, New York 10022-3301<br>(212) 459-0900<br>(212) 459-1826<br><br>by using the CM/ECF system which will send notification, by other means, of such filing to the above. |

Dated: September 2, 2008

Respectfully Submitted,

TRANSCAP ASSOCIATES, INC.

By /s/ Thomas A. Marrinson
    One of Its Attorneys

Thomas A. Marrinson
Grant Y. Lee
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL  60606
Phone:  (312) 207-1000
Fax: (312) 207-6400