# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **Transcap Associates, Inc.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-C-723 |
| | ) | |
| v. | ) | Hon. Judge John W. Darrah |
| | ) | |
| **Euler Hermes American Credit Indemnity Company and Robert M. Francisco,** | ) | Mag. Judge Michael T. Mason |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge.

Plaintiff Transcap Associates, Inc. ("Transcap") has filed three motions against defendant Euler Hermes American Credit Indemnity Company ("Euler") that are presently before this Court. Transcap moves for sanctions and to compel Euler to comply with our June 3, 2009 Order [68] (the "motion to compel"). Plaintiff also filed a motion to strike the declaration of Andrew Saulitis [78] (the "motion to strike"), and a motion for leave to take more than ten depositions and to compel deposition scheduling [90] (the "motion for leave"). This Court heard oral arguments on those motions on September 30, 2009. After carefully considering the arguments set forth in the parties' briefs and those raised by their counsel in open court, we find that Euler has failed to comply with our prior Order and with its discovery obligations under the Federal Rules of Civil Procedure in the manner set forth below. Consistent with those findings, Transcap's motion to compel and motion for leave are granted in part and denied in part, and Transcap's motion to strike is denied.

**I.     BACKGROUND**

This is an insurance coverage action brought by Transcap against Euler and its employee Robert M. Francisco ("Francisco") following the denial of coverage for claims made under a domestic markets business credit insurance policy (the "Policy"). Transcap purchased the Policy with an initial term of August 15, 2004 through August 14, 2005. The parties renewed the Policy on an annual basis, extending coverage through August 14, 2007. It is undisputed that Transcap paid the premium for the Policy, that Transcap subsequently filed claims under the Policy for non-payment of goods sold to non-parties Alco and New River, and that Euler denied coverage for those claimed losses.

In its complaint, Transcap alleges that Euler and defendant Francisco fraudulently misrepresented the scope of the Policy and that Euler denied its claims for coverage in bad faith. Transcap seeks damages for breach of contract and a declaratory judgment as to Euler's obligations under the Policy. Transcap also asserts related claims for consumer fraud, breach of the duty of ordinary care, and equitable estoppel. Euler filed a counterclaim seeking a declaration that there is no coverage under the Policy for the transactions at issue because there was no shipment of goods to Alco or New River. Euler also asserts that it erroneously paid $350,864 on a claim filed - and previously paid - under the Policy on the grounds that the goods at issue were never in Transcap's custody and physical control, but rather part of an inventory financing arrangement.

Transcap initially filled this case on December 26, 2007 in the Circuit Court of

2

Cook County, Illinois. Euler removed this case on February 1, 2008. Although this matter has been pending for close to two years, the parties have yet to complete discovery. On April 13, 2009, Transcap moved this Court to order Euler to provide a complete response to discovery requests initially served on or around November 26, 2008. We granted that motion, and ordered Euler to produce additional documents and serve amended discovery responses by June 12, 2009. [58]. In its present motion to compel, Transcap contends that Euler failed to comply with that Order, and has continued to "thwart discovery into how it has interpreted and applied the policy provisions at the heart of this case."

## II.  LEGAL STANDARD

A party is entitled to conduct discovery on any matter that is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Under the Federal Rules, a party may obtain discovery regarding matters that may not be admissible, provided that the "discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. When an opposing party fails to respond to discovery or provides evasive or incomplete responses, a party may seek an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). A party may also move for sanctions for failure to comply with a court order. Fed. R. Civ. P. 37(b). As the Seventh Circuit has recognized, the district court has "broad discretion over discovery matters," including motions to compel and/or for sanctions *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004) (*citing Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

## III.  MOTION TO STRIKE

Euler's response to Transcap's motion to compel consists of a four-page brief

and a twenty-two-page declaration by its counsel, Andrew Saulitis (the "Saulitis Declaration"). Transcap moves to strike that declaration on the grounds that it exceeds the 15 page limit for briefs adopted in this District. *See* Local Rule 7.1 ("Neither a brief in support of or in opposition to any motion . . . shall exceed 15 pages without prior approval of the court."). Transcap further argues that the Saulitis Declaration is a legal brief masquerading as a declaration, and contains a number of statements that plaintiff characterizes as "improperly argumentative . . . not based on personal knowledge . . . hearsay . . . or otherwise inadmissible." Transcap's arguments are well taken. Nevertheless, we are persuaded by Euler's contention that striking the Saulitis Declaration in its entirety would not expedite the work of this Court. *See, e.g. RLJCS Enters. v. Prof'l Benefit Trust, Inc.*, 438 F. Supp. 2d 903, 906 (N.D. Ill. 2006) ("Motions to strike are generally disfavored except when they serve to expedite."). To the extent the Saulitis Declaration contains legal argument, those statements will not be considered. Rather, our review of the declaration is confined to the statements that evidence Euler's compliance with its discovery obligations, including defendant's efforts to locate responsive documents. Transcap's request to strike the Saulitis Declaration is denied.

**IV.     MOTION TO COMPEL**

Transcap moves to compel Euler to comply with this Court's June 3, 2009 Order and requests that we award sanctions for Euler's continuing discovery violations. In its motion, Transcap states that the materials it seeks to compel are responsive to plaintiff's First Set of Interrogatories and First Set of Request for Production of Documents initially served on November 26, 2008. Euler does not dispute this fact.

4

Rather, defendant argues that it "has fully complied with its discovery obligations." We begin by reviewing each category of discovery requests that is at issue.

### A. Claims Files[1]

In its interrogatories, Transcap asked Euler to identify "each claim for an insured other than Transcap where Euler provided insurance coverage under a domestic markets business credit insurance policy for a sale of good or products by an insured that drop shipped such goods or products" (Interrogatory No. 10) and each such claim where Euler denied coverage (Interrogatory No. 11). Transcap requested that Euler produce all documents it relied on in answering the aforementioned interrogatories (Request No. 1). Transcap also sought to discover documents pertaining to Euler's acceptance or denial of coverage under any domestic markets business credit insurance policy for any claim that involved drop shipping of products or goods (Request No. 23). In connection with Transcap's prior motion to compel, defendant Euler argued that it could not identify similar claims because it would "require Euler to review every domestic policy it has ever issued and the circumstances of every claim under such policies." In response to that argument, this Court limited Euler's response to Interrogatory Nos. 10 and 11 and Request No. 23 to "domestic markets business credit insurance policies and a claim period or occurrence date between January 1,

---

[1]The parties refer, interchangeably, to "claim files" and "claims files." Both of these terms refer to Euler's business records, specifically the file defendant maintains for each claim filed by an insured under a domestic markets credit insurance policy. According to Euler's discovery responses, these files consist of notice of claim forms and supporting documentation including, among other things, bills of sale, shipping documents and payment records; acknowledgments of claims and estimates of coverage; communications with the insured; coverage analysis worksheets; decision records; copies of policy endorsements; and communications regarding investigation.

5

2003 and December 31, 2008." Subsequently, on June 29, 2009, Euler served its supplemental responses to plaintiff's discovery requests. In its response to Interrogatory Nos. 10 and 11, Euler directed Transcap to review the "claim files" for each claim filed under a domestic business markets credit insurance policy.

Transcap argues that Euler's response to Interrogatory Nos. 11 and 12 is improper and in bad faith, and violates this Court's prior Order. As noted above, on June 3, 2009, we issued an Order instructing Euler to respond to Transcap's outstanding discovery requests by June 12, 2009. It is undisputed that Euler did not comply with that Order. However, on June 11, 2009, and following a series of discussions between the parties, Transcap's counsel sent an email to Euler's counsel confirming that plaintiff would agree to an extension. That email also stated that Transcap's counsel "d[id]n't want to wait two weeks after the deadline set by the judge and then be told to find the materials in a warehouse or something of that nature. We are not agreeing to anything that would result in that outcome." In its motion, Transcap contends that Euler's production of documents by inspection violates the parties' discovery agreement. We agree.

Euler argues that it adequately responded to Transcap's discovery requests by making "approximately 30 file drawers with an average of 200 claim files in each (approximately 6,000 files) (approximately a quarter million pages of documents)" available for inspection on July 13-16, 2009. Pursuant to Fed. R. Civ. P. 33(d), where the answer to an interrogatory may be ascertained from the business records of the responding party and if the burden of ascertaining the responsive information is "substantially the same for either party," the responding party may respond by

"specifying the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," and "giving the interrogating party a reasonable opportunity to examine and audit the records."

Euler's response in opposition to Transcap's motion does not address Transcap's arguments regarding its failure to specify the records for Transcap to review. Euler merely states that Interrogatory Nos. 11 and 12 have "been the subject of extraordinary production" and that it "made all of its other insured files available to plaintiff's attorneys, yet plaintiff's attorneys have not completed inspection, have walked away of their own accord . . .and declined to . . . complete their inspection." In support, Euler cites the twenty-two page Saulitis Declaration. In that declaration, Mr. Saulitis avers that, in connection with that inspection, "plaintiff's counsel had been provided with indexes . . . so if they wanted to inspect particular files, those files would be pulled for them upon request." Transcap challenges Euler's reliance on the indexes to evidence defendant's compliance with Fed. R. Civ. P. 33(d).

Euler submitted copies of the indexes to this Court on September 21, 2009. Our review of the indexes did not reveal any means by which Transcap could identify responsive documents. This observation was confirmed during oral arguments, when Euler's counsel admitted that he initially "didn't know" how the indexes would enable Transcap to identify responsive materials in the file drawers. Equally troubling is Euler's failure to provide a comprehensive index prior to Transcap's inspection. Euler produced its initial index, which its counsel described in an accompanying email as "a listing of Domestic Markets Credit Insurance Polices (US), listing insured and policy numbers,"

on July 10, 2009. However, that index did not contain a list of the claims files that Euler planned to produce for inspection.

As set forth in its motion, Transcap's counsel began its inspection of documents at Euler's Maryland headquarters on July 13, 2009. At that time, plaintiff's attorneys learned from Euler's in-house counsel that Euler could generate an index of current claims files by policyholders in a "couple of hours." Transcap's counsel then requested a copy of that index. It is undisputed that Euler did not provide an index identifying each claim file number – along with the applicable policy number, policyholder name, and debtor name – until July 16, 2009, the fourth and final day of the document inspection.

In oral arguments, Euler's counsel's stated that it did not produce the index to the claims files prior to the last day of the inspection "because we weren't asked." That statement is belied by the correspondence from Transcap's counsel attached as exhibits 10, 13 and 14 to the motion to compel. For instance, on July 2, 2009, counsel stated that Transcap's willingness to inspect the claims files "may depend on the extent to which we can categorize and prioritize our review of the files . . . we would expect that there is some index system for the files, even if only by claim number and/or name of insured. To the extent anything of this nature exists, we would like to receive it immediately." In that letter, Transcap's counsel also requested access to "certain electronic systems that may contain relevant information" regarding the claims files, and "the same tools and resources that would be available to Euler." This letter, and the emails that follow, demonstrate that Transcap's counsel requested an index in advance of the scheduled document inspection.

Transcap also argues that Euler "made available for inspection only paper claims

8

files for certain currently open claims." Euler does not directly address this issue in its response. To the extent Euler maintains responsive documents in electronic form, those documents must be produced. *See* Fed. R. Civ. P. 34(b)(2)(E) (stating that unless otherwise stipulated or ordered "these procedures apply to producing documents or electronically stored information."). If Euler does not maintain any claims files in electronic form, it must inform Transcap of that fact thorough a verified statement from an officer, director or managing agent. That statement must also detail the manner in which Euler maintains current and closed claims files.

Paragraph 13 of the Saulitis Declaration states that Euler has "made available for inspection and copying every single claim file for every single Domestic Markets Credit Insurance Policy since 2003. . . . and has provided indexes to assist the process." However, as Transcap persuasively argues in its motion, many of the potentially relevant materials are contained in closed claims files. As explained in the Saulitis Declaration, Euler's "[c]losed claim files have been in off-site contract storage," and, in order to access those files, "one must ascertain when the claim file was closed and then check 'Iron Mountain' records by filling out a form to generate a list of policy and claim numbers, and then research to see which box the claim is in among miscellaneous records." It is undisputed that Euler has not produced any documents from its closed claims files. During oral arguments, Euler's counsel admitted that defendant has not even requested any closed claims files or made any effort to review those files for responsive materials. Counsel also admitted that, contrary to the Saulitis Declaration, Transcap had yet to provide an index of closed claims files.

Any documents contained in closed claims files that are responsive to Transcap's

discovery requests must be produced. On September 30, 2009, this Court ordered Euler to produce an index of closed claims files. To the extent it has not already done so, Transcap is to review that index and notify Euler's counsel, in writing, of the closed claims files that it believes may contain responsive information. Transcap is to identify its requested closed claims files within seven days of this Order. Euler is to produce copies of those files, in paper or electronic form with each page properly Bates-labeled or otherwise clearly identified, on a rolling basis and is to complete the production within twenty-one days of receiving Transcap's list of requested closed claims files. In the event Euler contends that a designated closed claims file is not responsive to any outstanding discovery request, it may object to producing that file. However, any objections must be made on an individual, file-by-file basis and only after a thorough review of the file by Euler's counsel. Moreover, Euler is advised that this Court will not uphold any objection based on a characterization of the present dispute as involving "inventory financing," rather than drop shipping, or "loans recharacterized as [a] sale of goods" such that claims by other insured that drop shipped goods or products are not relevant. This type of objection is contrary to the broad scope of discovery contemplated under Fed. R. Civ. P. 26(b)(1).

     **B.**    **Underwriting and Claims Manuals, Reference and Training Materials**

Next, Transcap seeks to compel a complete response to Request Nos. 19 and 20 which seek copies of all underwriting and claims manuals "used for guidance, reference or training by persons involved in the underwriting, drafting, generation or sale of domestic markets business credit insurance policies during the years 2000 to the present." This Court previously ordered Euler to respond to those requests. In its

response to plaintiff's motion to compel, Euler asserts that no such documents exist for the "subject policies" and it "cannot produce what it does not have."

The total number of domestic markets business credit insurance policies issued during the relevant time period is not known to this Court. However, Euler's counsel stated, during oral arguments, that 1,400 such policies are currently in effect. In its motion, Transcap persuasively argues that it "strains credulity to suppose that Euler's personnel issue billions of dollars of coverage every year without the benefit of any written guidance on sales or underwriting issues." In response, Euler states that it is not aware of any responsive materials that "pertain to the policy provisions and definitions that are involved in this action, or to coverage for inventory financing." This mischaracterizes Transcap's request. Request Nos. 19 and 20 are not limited to the Policy or to "coverage for inventory financing." Rather, Transcap seeks underwriting and claims manuals "however such manuals are denominated by [Euler], including any instructional materials, guidelines, policies, procedures, or other documents used for guidance, reference or training" by persons involved in the underwriting, drafting, sale or handling of claims under domestic markets business credit insurance policies during the years 2000 to the present. Transcap has shown that this material is relevant to its claims against Euler and therefore should be produced. Accordingly, Euler is to produce copies of all guidelines, policies, procedures, training materials or other documents that are responsive to Request Nos. 19 and 20 within fourteen days of the date of this Order. In the unlikely event that Euler continues to state that it has issued no less than 1,400 domestic markets business credit insurance policies without any underwriting or claims manuals, written guidelines, policies, procedures and/or

11

instructional materials, it must provide a verified statement from an officer, director or managing agent attesting to that fact within fourteen days of the date of this Order.

### C. Marketing Materials

Transcap also moves to compel a complete response to Request No. 21, as previously ordered by this Court. In that request, Transcap seeks "[a]ll marketing materials, including advertisements, pamphlets or brochures" pertaining to domestic markets business credit insurance policies. In response, Euler stated that it would produce digital images of its marketing brochures and allow inspection of other responsive documents. On June 9, 2009, Euler produced eleven brochures comprising 67 pages of marketing materials. Euler has not produced any other responsive documents. However, in its response in opposition to Transcap's motion, Euler states that it has "produced such [marketing] materials . . . [and] has provided access to web-based marketing material, and has directed . . . plaintiff to hundreds of pages of archival materials." The Saulitis Declaration further clarifies that Euler's marketing materials from 2003 to 2008 are available in native format on 449 pages of its archival website which may be accessed through http://www.archive.org/web/web.php an archival and publically accessible internet site run by the Internet Archive, a 501(c)(3) non-profit, and commonly known as the "way back machine." *See* http://www.archive.org/about/about.php.

As an initial matter, we note that Transcap's request – and our Order – required Euler to produce its marketing materials dating back to 2000, not 2003. We are also troubled by Euler's reliance on the way back machine as the repository for responsive materials. Euler has not shown, or even alleged, that it maintains all of its

12

advertisements, white papers and other marketing materials on the way back machine in the ordinary course of business such that their production in this manner is appropriate. Further, we note that the Internet Archive warns of missing links and images in webpages that may be accessed through the way back machine. *See* http://www.archive.org/about/faqs.php.

The Saulitis Declaration states that defense counsel "investigated [Euler's] information technology area to determine if any further archival material existed in electronic form regarding historic marketing materials, but were informed that such material is not retained." However, there is no indication that Euler made a good faith effort to locate responsive documents that are stored in paper form, or that are in the custody and control of its marketing and/or sales staff. Accordingly, we are not satisfied that Euler has made a good faith effort to locate responsive materials in its possession, custody or control. Euler must conduct a thorough search for documents that are responsive to Request No. 23 and produce those documents in paper or electronic form. Euler is to produce the aforementioned documents on a rolling basis and is to complete the production within fourteen days of this Order.

### D. Court and Regulatory Filings

Next, Transcap moves to compel the production of court and regulatory filings that are responsive to Request Nos. 17 and 18. It is undisputed that, in response to those requests, Euler produced a single filing for rate/form changes with the Illinois Department of Insurance. In opposing plaintiff's motion, Euler asserts that it "has produced regulatory filings . . . which, in any event, are publically available, as are court filings." Even if we were to assume, as Euler claims, that all relevant regulatory filings

are part of the public record, that does not relieve defendant of its burden of production. It is apparent that Transcap has a more limited knowledge of Euler's business practices, and therefore it would be more burdensome for plaintiff to locate responsive materials. Accordingly, Transcap's request to compel a response to Request No. 18 is granted in part. Euler is to produce documents that are responsive to Request No. 18, in paper or electronic form, within fourteen days of this Order. However, and because Transcap has not shown that filings concerning "any Transcap Policies" are relevant to this dispute, Euler's response is limited to domestic markets business credit insurance policies and the years 2003 to 2008.

Transcap also moves to compel a compete response to Request No. 17, which seeks various court filings that pertain to the "meaning, interpretation, construction and application" of policy terms. That request is granted for the reasons stated above, and is limited to domestic markets business credit insurance policies and the years 2003 to 2008. We further note that Euler has not produced any documents that are responsive to this request, and there is no indication that it conducted any search for responsive documents. At a minimum, Euler must identify the cases and/or arbitrations to which it is or was a party that involve domestic markets business credit insurance policies and produce any responsive documents in its custody or control that are not otherwise protected by the attorney client privilege. Those documents must also be produced in paper or electronic form within fourteen days of this Order.

### E. Francisco Employment File

Finally, Transcap argues, in its reply, that Euler has refused to produce a copy of defendant Francisco's employment file, which is responsive to Request No. 22.

Francisco is or was Euler's sales agent. This Court previously granted Transcap's motion to compel the production of his employment file. In the Saulitis Declaration, Euler states that on June 30, 2009 – more than two weeks after the production deadline set by this Court – it "produced, electronically, the licensing materials for Robert M. Francisco in Illinois, the time period during which he was employed by [Euler], fully responsive to RFP 22." As counsel should have realized, production of the licensing materials is not "fully responsive" to Request No. 22, nor does it satisfy Euler's obligation to comply with our June 3, 2009 Order. Exhibit one to Transcap's reply is a letter from Transcap's attorney confirming defense counsel's statement that Francisco's employment file is "4 or 5 inches thick." Euler is to produce a copy of that file, in paper or electronic form, within three business days of this Order.

### F. Request for Sanctions and an Award of Fees and Costs

Transcap seeks its costs incurred in connection with the motion to compel. Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including the attorney's fees." Based on the numerous telephone conferences between counsel, as well as their meeting on July 13, 2009, we find that Transcap made a good faith effort to obtain the requested discovery without court action. We also find that Euler's conduct, specifically defendant's repeated failure to comply with its discovery obligations under the Federal Rules, necessitated Transcap's motion. Accordingly, Transcap's request for an award of costs and fees incurred in connection with this motion pursuant to Fed. R. Civ. P. 37(a)(5) is granted. Subject to

15

the limitations discussed above, Transcap's request for an order precluding Euler from raising any objections to plaintiff's discovery requests is denied.

Transcap also seeks sanctions for Euler's failure to obey a discovery order pursuant to Fed. R. Civ. P. 37(b)(2). Specifically, Transcap seeks: (1) an award of its costs and fees and (2) an order establishing as fact that the Policy covers goods that are "drop shipped" even to the extent such goods were not in the possession, custody or control of Transcap prior to the sale, and/or striking Euler's second counterclaim insofar as it seeks repayment of amounts paid on a prior claim. Transcap argues that an order directing that certain facts be taken as established and prohibiting Euler from supporting certain claims is appropriate in light of Euler's "protracted, repeated discovery violations that include violation of a court order."

Because this Court is "in the best position to determine if a party has complied with its discovery orders," we have discretion to select an appropriate sanction. *Melendez v. Illinois. Bell Tel. Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996). However, the striking of Euler's second counterclaim, in part, and entry of an order effectively dismissing an affirmative defense is a drastic sanction that should only be imposed if we find that, in light of the entire record, it is "proportionate to the circumstances surrounding [defendant's] failure to comply with the discovery rules." *Salgado v. GMC*, 150 F.3d. 735, 740 (7th Cir. 1998) (quotations omitted); *see also Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) ("An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery.") (quotation omitted). While we are troubled by Euler's cavalier approach to discovery, we do not find that it reaches the level of bad faith or willfulness necessary to justify all of the

16

requested relief.  As discussed above, Euler's conduct resulted in an unnecessary delay of the discovery process and caused Transcap to incur additional attorneys' fees. Accordingly, monetary sanctions are appropriate.

Transcap's request for some, if not all, of its fees and expenses incurred in connection with its efforts (prior to the filing of the motion to compel) to obtain compliance with the Court's June 3, 2009 Order is granted.  This may include time spent by its counsel drafting correspondence to, or engaging in phone conferences with, defense counsel.  It also may include the time spent attempting to secure an index to the claims files.  Moreover, in light of Euler's failure to produce the index until the last day of the document inspection – or to produce a closed claims files index until ordered to do by this Court – Transcap is awarded its attorneys' fees for at least a portion of the time spent inspecting Euler's documents at its Maryland headquarters on July 13 - 16, 2009.  Transcap's counsel is to submit time sheets, billing statements and/or other records itemizing the aforementioned fees and expenses to chambers, room 2206, within twenty-one days of this Order.  Also on that date, Transcap should provide a copy of its submission, with information protected by the attorney-client and/or work product privilege redacted, to Euler.

## V.     MOTION FOR LEAVE

Transcap also moves this Court to grant it leave to take twenty-eight depositions, which is well in excess of the number contemplated by Fed. R. Civ. P. 30(a)(2)(A). However, Transcap also asserts that it "has no desire to take twenty-eight depositions" but rather seeks an order compelling Euler to identify the roles of potential witnesses and/or stipulate that it will not call certain individuals at trial.  In its motion, Transcap

17

argues that it has repeatedly and without success requested that Euler prioritize its witnesses (*i.e.,* identify those with the most information) and identify the position and/or role of each of the individuals Euler identified as having knowledge of the facts at issue.

In opposing Transcap's request to take additional depositions, Euler argues that Transcap has not met the standard for exceeding the ten-deposition limit under Fed. R. Civ. P. 30(a)(2). We agree that Transcap has not shown that it requires twenty-eight depositions. However, we are also persuaded that Transcap has no real desire to take twenty-eight depositions, but rather seeks assistance in prioritizing Euler's proposed witnesses. To the extent Transcap's motion seeks an order compelling Euler to provide additional details regarding the individuals identified in defendants' Fed. R. Civ. P. 26(a) initial disclosures and in response to certain interrogatories seeking the identity of persons involved in the underwriting, issuance, and renewal of the Policy and in handling the claims at issue, it is granted. Transcap's motion for leave is otherwise denied.

This Court previously ordered Euler and defendant Francisco to amend their Fed. R. Civ. P. 26(a) disclosures by October 5, 2009. We further ordered defendants, for each such individual who is or was a Euler employee, to identify the individual's job title, department and dates of employment. That information should enable Transcap to better identify the roles of potential witnesses. To the extent further clarification is necessary, Transcap is to notify defense counsel, in writing. Within ten days of receiving any such correspondence, Euler's counsel is to provide the role and, if applicable, job title, department and dates of employment for any individual identified in plaintiff's initial disclosures and/or interrogatory responses. This Court also anticipates

that Transcap may discover further information regarding Euler's proposed witnesses during the Fed. R. Civ. P. 30(b)(6) deposition of defendant's corporate representative, which is to proceed as scheduled on November 2 and/or 3, 2009. If, after taking that deposition, Transcap continues to believe that more than ten depositions are necessary, and if the parties are unable to reach an agreement on that issue, plaintiff may file a motion for leave pursuant to Fed. R. Civ. P. 30(a)(2). That motion must be filed by November 6, 2009.

## VI. CONCLUSION

Wherefore, for the reasons stated above, plaintiff's motion to compel and motion for leave are granted in part and denied in part, and plaintiff's motion to strike is denied.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**DATED: October 9, 2009**